RB:MMS
F.#2011R01648

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

ROBERT FABRIZIO,

            Defendant.

- - - - - - - - - - - - - - -X

I N F O R M A T I O N

Cr. No. 11 - 752.
(T. 18, U.S.C., §§
981(a)(1)(c),
982(a)(1), 982(b)(1),
1954(1), 1954(2),
1956(h), 1957(b),
1957(d)(1), 2 and 3551
et seq.; T. 21,
U.S.C., § 853(p); T.
28, U.S.C., §
2461(c); T. 29,
U.S.C., §§ 186(a)(2)
and 186(d)(2))

THE UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

    At all times relevant to this Information, unless otherwise indicated:

## I.  The Labor Union and Welfare Fund

    1.  The Metal Polishers/Refinishers, Painters, Production & Novelty Workers, Sign Pictorial & Display, Automotive Equipment Painters Workers Union, Local 8A-28A, AFL-CIO ("Local 8A-28A") was a labor organization for purposes of the Labor Management Relations Act of 1947, as defined by Sections 142 and 152 of Title 29, United States Code, and an employee organization, as defined by Title I of the Employee Retirement Income Security Act of 1974 ("ERISA") and by Sections 1002 and

1003 of Title 29, United States Code.  Local 8A-28A was initially
headquartered in New York, New York, but moved its headquarters
to Long Island City, New York in approximately 2007.

2.    Local 8A-28A, on behalf of its members, entered
into collective bargaining agreements with employers who employed
members of Local 8A-28A.  These agreements obligated the
employers to pay certain salaries and other employee benefits to
their employees who were members of Local 8A-28A.  Officers of
Local 8A-28A represented such employees and members by, among
other things, negotiating collective bargaining agreements and
ensuring that employers complied with their contractual
obligations under those agreements, including the payment of
contributions for union-sponsored health and welfare benefits.

3.    Members of Local 8A-28A were covered by the Metal
Polishers-Metal Production Union Local 8A-28A Welfare Fund (the
"Welfare Fund"), an employee welfare benefit plan, as defined by
Sections 1002 and 1003 of Title 29, United States Code and
subject to ERISA.  The Welfare Fund provided healthcare benefits
to employee and union member participants and their
beneficiaries.

4.    The Welfare Fund was managed by a Board of
Trustees consisting of Union Trustees and Employer Trustees (the
"Board").  The Board had discretion over the Welfare Fund's
assets and was responsible for its overall operation and

administration.   Each trustee had a fiduciary duty under ERISA to manage the Welfare Fund's assets solely for the benefit of the participants and their beneficiaries, and to refrain from engaging in transactions prohibited by ERISA, including receiving consideration for his or her own personal account from any party dealing with the Welfare Fund in connection with a transaction involving the assets of the Fund.

II.   <u>The Defendant and His Co-conspirators</u>

     5.   The defendant ROBERT FABRIZIO owned and/or controlled various companies, including Three Generations Contracting, Inc. ("Three Generations"),  City-Wide Control Systems, Inc. ("City-Wide"), Total Building Services, Inc. ("TBS") and MAF Consulting, Corp. ("MAF").   Three Generations and City-Wide were general contracting companies; TBS was a maintenance company; and MAF was a shell corporation created by FABRIZIO to conduct financial transactions.   FABRIZIO served as President of Three Generations, which held a collective bargaining agreement with Local 8A-28A.   FABRIZIO was therefore an officer and agent of an employer whose employees were covered by the Welfare Fund.   FABRIZIO was also an Employer Trustee of the Welfare Fund and thus a member of the Board.

     6.   Company A, a company the identity of which is known to the United States Attorney, was contractually retained by the Board to serve as the Third Party Administrator ("TPA")

4

for the Welfare Fund.  Company A was responsible for, among other
things, paying and processing health insurance claims for union
members participating in the Welfare Fund and their
beneficiaries.  Company A charged a monthly fee per member to
administer the Welfare Fund.  John Doe #1, an individual whose
identity is known to the United States Attorney, was the
President of Company A.

        7.    John Doe #2, an individual whose identity is known
to the United States Attorney, was a Union Trustee of the Welfare
Fund, Chairman of the Board and President of Local 8A-28A.

III. The Kickback/Money Laundering Scheme

        8.    In or about March 2003, FABRIZIO, at the direction
of John #2, approached John Doe #1 about a kickback scheme in
which John Doe #1 would pay FABRIZIO and John Doe #2 in order to
ensure that Company A would remain the TPA of the Welfare Fund.
John Doe #1 agreed to make the payments.

        9.    Pursuant to the scheme, each month, John Doe #1
caused a check (the "Monthly Check") to be written from Company A
to FABRIZIO's shell corporation, MAF, and mailed to an apartment
FABRIZIO owned in Staten Island, New York.  FABRIZIO typically
deposited the Monthly Check into MAF's bank account and
subsequently caused checks to be written from MAF to one of
FABRIZIO's other companies, Three Generations or City-Wide.
These checks were thereafter cashed at a check casher in

Brooklyn, New York, by FABRIZIO or someone who worked for him.
FABRIZIO used the cash to pay John Doe #2 his portion of the
kickback and to pay employees of Three Generations off the books.
On at least one occasion, at the request of John Doe #2, FABRIZIO
caused a check from MAF to be written to a company in which John
Doe #2 had an interest, instead of giving John Doe #2 cash.
Between March 2003 and September 2010, Company A paid
approximately $740,000 in kickbacks into the MAF account.

IV.  The New Jersey Home

10.  In or about and between 2007 and 2010, FABRIZIO
permitted John Doe #2 and his family to live rent-free in a house
owned by TBS that was located in Oakland, New Jersey (the
"Oakland House").  During the time that John Doe #2 lived in the
house, FABRIZIO paid the real estate taxes on the Oakland House
using John Doe #2's portion of the kickback monies.

COUNT ONE
(Kickbacks to Influence Operations of Employee Benefit Plan)

11.  The allegations contained in paragraphs one
through ten are hereby realleged and incorporated as if fully set
forth in this paragraph.

12.  In or about and between March 2003 and September
2010, both dates between approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant ROBERT
FABRIZIO, together with others, being a trustee, officer and
agent of an employee welfare benefit plan, to wit: an Employer

Trustee of the Welfare Fund, did knowingly and intentionally receive, agree to receive and solicit one or more fees, kickbacks, commissions, gifts, money and things of value, to wit: approximately $740,000 in checks written from Company A to MAF, because of, and with intent to be influenced with respect to, his actions, decisions and other duties relating to one or more questions and matters concerning the Welfare Fund, to wit: the continued retention of Company A as the TPA of the Welfare Fund.

(Title 18, United States Code, Sections 1954(1), 1954(2), 2 and 3551 et seq.)

<u>COUNT TWO</u>
(Money Laundering Conspiracy)

13.  The allegations contained in paragraphs one through ten are hereby realleged and incorporated as if fully set forth in this paragraph.

14.  In or about and between March 2003 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ROBERT FABRIZIO, together with others, did knowingly and intentionally conspire to: (i) conduct one or more financial transactions in and affecting interstate commerce, to wit: causing checks from Company A to be endorsed and deposited into MAF's bank account and thereafter converting them into cash to pay employees and John Doe #2, which transactions in fact involved the proceeds of specified unlawful activity, to wit: the receipt of kickbacks to

influence the operations of an employee welfare benefit plan, in violation of Title 18, U.S.C., Section 1954, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(I); and (ii) engage in monetary transactions, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: the receipt of kickbacks to influence the operations of an employee welfare benefit plan, in violation of Title 18, U.S.C., Section 1954, contrary to Title 18, United States Code, Section 1957.

(Title 18, United States Code, Sections 1956(h), 1956(a)(1)(B)(I), 1957(b), 1957(d)(1) and 3551 et seq.)

## COUNT THREE
(Unlawful Payment to Union Official)

15.    The allegations contained in paragraphs one through ten are hereby realleged and incorporated as if fully set forth in this paragraph.

16.    In or about and between 2007 and 2010, both dates being approximate and inclusive, within the District of New Jersey, the defendant ROBERT FABRIZIO, a person acting in the

interest of an employer, to wit: Three Generations, which was a party to a collective bargaining agreement with Local 8A-28A, did knowingly and willfully pay, lend and deliver, and agree to pay, lend and deliver, a thing of value in an amount in excess of $1000, to wit: a rent-free house located in Oakland, New Jersey, to John Doe #2, the President of Local 8A-28A, a labor organization which represented, sought to represent and would have admitted to membership employees of Three Generations, who were employed in an industry affecting commerce, to wit: the construction industry.

(Title 29, United States Code, Sections 186(a)(2) and 186(d)(2); Title 18, United States Code, Sections 2 and 3551 <u>et seq.</u>)

<u>CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE AND THREE</u>

17.   The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Count One or Count Three, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

18.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

     a.   cannot be located upon the exercise of due diligence;

     b.   has been transferred or sold to, or deposited with, a third party;

     c.   has been placed beyond the jurisdiction of the court;

     d.   has been substantially diminished in value; or

     e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

     (Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

<u>CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWO</u>

19.   The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Two, the government will seek forfeiture in accordance with

Title 18, United States Code, Section 982(a)(1), of all property
involved in the offense of conviction in violation of Title 18,
United States Code, Section 1956, or conspiracy to commit such
offense, and all property traceable to such property.

20.   If any of the above-described forfeitable
property, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due
diligence;

b.    has been transferred or sold to, or deposited
with, a third party;

c.    has been placed beyond the jurisdiction of
the court;

d.    has been substantially diminished in value;
or

e.    has been commingled with other property which
cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18,
United States Code, Section 982(b)(1), to seek forfeiture of any

11

other property of the defendant up to the value of the

forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and

982(b)(1))


LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2005R01013
FORM DBD-34
JUN. 85

Crim. No. 11-752

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL  DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*Robert Fabrizio,*

Defendant.

# I N F O R M A T I O N

T. 18, U.S.C., §§ 981(a)(1)(c), 982(a)(1), 982(b)(1), 1954(1), 1954(2), 1956(h), 1957(b), 1957(d)(1)  2 and 3551 et seq.; T. 21, U.S.C. § 853(p); T. 28, U.S.C. § 2461(c); T. 29, U.S.C., §§ 186(a)(2) and 186(d)(2))

*A true bill.*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Foreman*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*

*of* _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

*Marisa Megur Seifan, Assistant U.S. Attorney (718-254-6008)*